1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19

| | |
|---|---|
| DOROTHY MARAGLINO,<br><br>                        Plaintiff,<br><br>v.<br><br><br>COUNTY OF SAN DIEGO, et al.,<br><br>                        Defendants. | Case No.: 15-cv-199-WQH-MDD<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**[ECF No. 20]** |

20
21
22
23
24
25

     This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

1

15-cv-199-WQH-MDD

For the reasons set forth herein, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED** in part and **DENIED** in part.

## I. PROCEDURAL HISTORY

At the time she filed her Complaint, Dorothy Maraglino ("Plaintiff") was a pre-trial detainee proceeding *pro se* and *in forma pauperis*. (ECF Nos. 1, 12). On February 18, 2015, Plaintiff filed the operative First Amended Complaint ("FAC") pursuant to 42 U.S.C. § 1983. (ECF No. 4). Plaintiff names the County of San Diego ("County"), San Diego County Sheriff William D. Gore, San Diego County Assistant Sheriff ("Asst. Sheriff") Rich Miller, San Diego County Sheriff Captain ("Capt.") Edna Milloy, and San Diego County Sheriff's Detectives Susan Fiske and Brian Patterson in their official and individual capacities ("Defendants"). (ECF No. 4 at 5-7 ¶¶ 4-9).

Plaintiff sets forth multiple claims that her constitutional rights were violated when San Diego Sheriff's Department ("SDSD") personnel allegedly: (1) sexually harassed her; (2) solicited her to perform an illegal act; (3) solicited her to commit perjury; (4) behaved inappropriately towards her; (5) interfered with her medical care; (6) denied her medical and dental care; (7) improperly shackled her while she was pregnant; (8) injured her through improper shackling; (9) denied her educational opportunities; (10) read and censored her legal mail; (11) denied her access to legal and *pro per* resources; (12) and denied her contact visits with her minor child. (ECF No. 4 at 8-13).

2

Plaintiff additionally claims that SDSD has a general practice of implementing policies which violate her constitutional rights.  (*Id*.).

Plaintiff seeks: (1) injunctive and declaratory relief; (2) nominal, compensatory and punitive damages; (3) costs and reasonable fees; (4) pre- and post-judgment interest; and (5) other "just and equitable" relief.  (*Id*. at 14-15).

On November 25, 2015, Defendants filed a Motion to Dismiss the FAC.  (ECF No. 20).  Plaintiff sought three extensions of her time to file an opposition, and the Court extended her time to respond from December 21, 2015, to March 30, 2016.  (ECF Nos. 21, 23, 24, 26, 27, 30, 31).  Nevertheless, Plaintiff has not filed an opposition.

## II. LEGAL STANDARD

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (internal quotations omitted).  The pleader must provide the Court with "more than an un-adorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements will not suffice."  *Iqbal*, 556 U.S. at 678.  "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [a court

15-cv-199-WQH-MDD

1   is] not bound to accept as true a legal conclusion couched as a factual

2   allegation." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

3       A *pro se* pleading is construed liberally on a defendant's motion to

4   dismiss for failure to state a claim. *Thompson v. Davis*, 295 F.3d 890,

5   895 (9th Cir. 2002) (citing *Ortez v. Washington Cnty.*, 88 F.3d 804, 807

6   (9th Cir. 1996)). The *pro se* pleader must still set out facts in her

7   complaint that bring her claims "across the line from conceivable to

8   plausible." *Twombly*, 550 U.S. at 570. A court "may not supply

9   essential elements of the claim that were not initially pled." *Ivey v. Bd.*

10  *of Regents,* 673 F.2d 266, 268 (9th Cir. 1982).

11  **III. BACKGROUND FACTS**

12      The FAC sets forth few, often vague, details in support of each

13  claim. In her first claim, Plaintiff alleges that Defendant Fiske sexually

14  harassed her during Plaintiff's post-arrest questioning and booking on

15  May 10, 2012. (ECF No. 4 at 8 ¶¶ 17-19). Plaintiff claims that, "[w]hile

16  the Plaintiff was undressed, photographed, had hairs pulled,

17  fingerprinted, and other forensic procedures performed, Defendant

18  Fiske made lewd, condescending, humiliating and highly embarrassing

19  comments of a sexual nature." (*Id*. ¶ 19).

20      In her second claim, Plaintiff alleges that on April 15, 2012,

21  Defendant Patterson solicited her to commit an illegal act during the

22  execution of a search warrant at Plaintiff's home. (*Id*. ¶¶ 20-21).

23  Plaintiff claims that Patterson asked her to question a suspect who was

24  represented by an attorney and in custody. (*Id*. ¶ 21).

25

15-cv-199-WQH-MDD

In her third claim, Plaintiff alleges that on April 17, 2012, Defendant Patterson solicited her to commit perjury. (*Id.* at 9 ¶¶ 22-26). Plaintiff claims that Patterson asked her to say she saw a suspect in custody at a particular time and place. (*Id.* ¶ 24). Plaintiff refused. (*Id.* ¶ 24). Plaintiff asserts that Patterson threatened to make Plaintiff a suspect if she refused to comply and, when she refused, she was arrested as a conspirator. (*Id.* ¶¶ 25-26).

In her fourth claim, Plaintiff alleges that on May 10, 2012, Defendant Patterson and his unnamed partner transported her to Las Colinas Detention Facility ("LCDF"). (*Id.* ¶ 27). Plaintiff claims that Patterson "made highly inappropriate comments . . . and passed [] [her] a pair of handcuffs to secure herself." (*Id.* ¶ 28).

In her fifth claim, Plaintiff alleges that during the week of October 27, 2012, she drank cleaning fluid. (*Id.* ¶ 29). Plaintiff claims that unnamed jail staff "elected to neglect" to alert paramedics, resulting in a three hour delay in receiving treatment and gastric damage. (*Id.* ¶¶ 30-31). Plaintiff asserts that a "USMC" physician thought it best to admit Plaintiff into care and began the process but SDSD Deputies Casey and Storrs, who are not named as defendants, were able to have Plaintiff released into SDSD care. (*Id.* at 10 ¶¶ 32-34).

In her sixth claim, Plaintiff alleges that in June 2012, she requested dental procedures "required by law for pregnant inmates," which were denied because Plaintiff was not yet sentenced. (*Id.* ¶¶ 35-36). Plaintiff further claims that in June 2013, a staff physician wrote

5

her two medical referrals, but unnamed SDSD staff refused to take her. (*Id.* ¶¶ 37-38).

In her seventh claim, Plaintiff alleges that in the weeks between May 15 and July 31, 2012, she was shackled while pregnant during transport to court appearances in violation of California law. (*Id.* ¶¶ 39-40). Plaintiff claims that during the week of May 15, 2012, this improper shackling resulted in her falling, but she was stopped before hitting the ground by a court deputy and her attorney. (*Id.* ¶ 41).

In her eighth claim, Plaintiff alleges that on December 11, 2014, an unnamed SDSD transportation corporal secured her shackles too tightly and told her to "hurry up," resulting in scratches on Plaintiff's wrists and swollen and discolored ankles. (*Id.* 11 ¶¶ 42-45). Plaintiff states that her injuries were treated by SDSD medical staff. (*Id.* ¶ 46).

In her ninth claim, Plaintiff alleges that she was denied the ability to participate in a correspondence paralegal class, thereby violating her constitutional right to an education. (*Id.* ¶¶ 47-48). Plaintiff claims the denial was the result of a postcard-only policy which restricted the type of mail inmates could receive. (*Id.* ¶ 48-49). Plaintiff states she filed a tort claim requesting the County pay for her education, but the claim was denied as untimely. (*Id.* 50-51).

In her tenth claim, Plaintiff alleges that in late 2014 she noticed that unnamed SDSD staff were censoring legal communications between her and her assigned attorney, and were censoring items she wished to take to legal visits. (*Id.* at 12 ¶¶ 53-54). Plaintiff claims she filed grievances that included allegations that unnamed SDSD

15-cv-199-WQH-MDD

personnel were reading her legal communications to her attorney.  (*Id.* ¶ 56).  Plaintiff states that in September 2014 Sergeant Masterson, who is not named as a defendant, responded to her grievances and informed her that jail staff were entitled to inspect inmate legal mail to verify its contents.  (*Id.* ¶ 57).  Plaintiff claims that the "State Board of Standards" verified that the practice is illegal but SDSD refused to change it.  (*Id.* ¶ 59).

In her eleventh claim, Plaintiff alleges that although she has representation in her criminal case, she is actively pursuing a few *pro per* civil cases.  (*Id.* ¶ 60).  Plaintiff states that she has been repeatedly denied access to *pro per* legal resources.  (*Id.* ¶ 61).

In her twelfth claim, Plaintiff alleges that she was permitted by the court to have contact visits with her minor child beginning in April 2013.  (*Id.* at 13 ¶ 62).  Plaintiff claims that in December 2013 her visit was canceled because a new policy was implemented that denied Administrative Segregation ("ADSEG") inmates contact visits.  (*Id.* ¶ 63).  Plaintiff states that she filed numerous grievances which have not restored her visits.  (*Id.* ¶ 64).

In her thirteenth claim, Plaintiff alleges that SDSD repeatedly adopts and implements policies that violate the Eighth and Fourteenth Amendment rights of inmates.  (*Id.* ¶¶ 65-67).  Plaintiff claims that Defendants' actions and inactions caused and will continue to cause her injury and are motivated by ill-intent and committed with reckless indifference to Plaintiff's rights.  (*Id.* ¶¶ 68-69).

# IV. DISCUSSION

## A. Duplicative Parties

### 1. Sheriff Gore

Plaintiff alleges that Sheriff Gore is a final policy maker for County jails, including where Plaintiff was incarcerated (LCDF) at the time of these events.  (ECF No. 4 at 5 ¶¶ 3, 5).  Plaintiff asserts that Sheriff Gore is responsible for the administration of County jails and for the actions of SDSD staff "who interpret and apply the mail policy for inmates."  (*Id*.).

Specifically, Plaintiff asserts that her constitutional rights were violated by: (1) a "postcard only" mail policy that restricted her receipt of mail, thereby violating her right to education; and (2) a "scanning policy" where jail personnel would censor and read her legal mail, thereby violating Plaintiff's attorney-client privilege.  (*Id*. at 11 ¶¶ 47-51; at 12 ¶¶ 53-59).

Defendants argue that Sheriff Gore should be dismissed in his official capacity because naming him is unnecessary and duplicative. (ECF No. 20 at 8-10).  Defendants contend that the County is the real party in interest for any official capacity policy claim.  (*Id*.).

None of the published cases Defendants cite require dismissal of an official named in an official-capacity suit.  *See Vance v. Cnty. of Santa Clara,* 928 F. Supp. 993, 996 (N.D. Cal. 1996) (holding that when both an officer and the local government entity he works for are named in a lawsuit and the officer is named in his official capacity, the officer is a redundant defendant and *may* be dismissed); *see also Luke v.*

15-cv-199-WQH-MDD

*Abbott*, 954 F. Supp. 202, 203 (C.D. Cal. 1997) (holding it would be proper for a district court to either dismiss an official if the entity he represents is a properly named defendant and even then only if the plaintiff does not also bring suit against the official in their individual capacity). Rather, these precedents approve of pleadings naming the official as "simply another way of pleading an action against an entity of which an officer is an agent." *Ky. v. Graham*, 473 U.S. 159, 165 (citing *Monell*, *supra*, 436 U.S. at 659 n.55). *Graham* states that "there is no longer a *need*" to name both the official and the local government entity. *Graham*, 473 U.S. at n.14 (emphasis added). None of these cases require the dismissal of Sheriff Gore.

Defendants ignore *Bell v. Baca*, No. CV0102067 DDP (SHX), 2002 WL 368532 (C.D. Cal. Feb. 26, 2002), which considered facts comparable to those presented here and distinguished *Luke* and *Vance*. *Bell* held:

> Some district courts have held that if individuals are being sued in their official capacities as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed. *See, e.g., Vance v. Cnty. of Santa Clara,* 928 F. Supp. 993, 996 (N.D. Cal. 1996). In *Luke v. Abbott,* the court decided that "[a] plaintiff cannot elect which of the defendant formats to use. . . . If only the official-capacity officer is named, it would be proper for the Court upon request to dismiss the officer and substitute instead the local government entity as the correct defendant." 954 F. Supp. 202, 203 (C.D. Cal. 1997).
>
> It is axiomatic, however, that the plaintiff is master of his complaint. Therefore, the Court declines to follow the analysis adopted in *Luke*. The defendant provides no

15-cv-199-WQH-MDD

> compelling reason why the Court should override the
> plaintiff's choice of defendant and substitute the County of
> Los Angeles for Sheriff Baca. Absent any Ninth Circuit
> authority to the contrary, the Court denies the defendant's
> request to formally substitute the County of Los Angeles as
> the defendant in place of Sheriff Baca.

*Bell*, 2002 WL 368532, at *2.

Dismissal of a duplicative official is permissive, not mandatory. *See Lara v. Cnty. of Los Angeles*, No. CV 12-08469 DDP JCGX, 2013 WL 100192, at *3 (C.D. Cal. Jan. 8, 2013) (comparing *Bell,* 2002 WL 368532 at *2 with *Luke,* 954 F. Supp. at 204). Plaintiff is the master of her complaint, and on this record the Court finds *Bell* persuasive.

Accordingly, the Court rejects Defendants' argument that Sheriff Gore in his official capacity must dismissed as a duplicative party.

Further, the Ninth Circuit held that the County Sheriff is the final policy maker in operating county jails and is separately suable apart from the county under § 1983. *Streit v. Cnty. of L.A.*, 236 F.3d 552, 567 (9th Cir. 2001). Plaintiff specifically alleges that Sheriff Gore is "a final policy maker for Defendant County." (ECF No. 4 at 5 ¶ 5). Because Sheriff Gore is separately suable, the Court finds he is a proper party. *Streit*, 236 F.3d at 567.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Sheriff Gore in his official capacity as a duplicative party be **DENIED**.

### 2. Assistant Sheriff Miller

Plaintiff alleges Asst. Sheriff Miller is head of the Detention Services Bureau and responsible for the operation and management of

15-cv-199-WQH-MDD

County jails.  (ECF No. 4 at 6 ¶ 6).  Plaintiff asserts that Asst. Sheriff Miller is responsible for the "promulgation and implementation of Detention Services Bureau policies, including the policies challenged herein."  (*Id*.).  Defendants argue that Asst. Sheriff Miller, in his official capacity, is a duplicative party.  (ECF No. 20 at 8).

"[A]n assistant sheriff is not a policy maker."  *Kitchens v. Mims*, No. CV-05-1567-DCB P, 2015 U.S. Dist. LEXIS 8789, at *27 (E.D. Cal. Jan. 26, 2015).  But "a plaintiff may show that an official policymaker either delegated policymaking authority to a subordinate or ratified a subordinate's decision, approving the decision and the basis for it" for the purposes of showing municipal liability.  *Hyland v. Wonder*, 117 F.3d 405, 414 (9th Cir. 1997) (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 126-27 (1988)) (internal quotations omitted).  "Under California law, the [municipality]'s charter determines municipal affairs such as personnel matters."  *Hyland*, 117 F.3d at 414 (citing *City and Cnty. of San Francisco v. Patterson*, 202 Cal. App. 3d 95, 102 (Cal. Ct. App. 1988)).  The Charter of the County of San Diego § 605 provides that "[t]he Sheriff shall organize the Sheriff's Department for efficient and effective law enforcement."  *Id.*

The language of County Charter § 605 gives Sheriff Gore broad discretion in organizing and delegating authority within SDSD.  It is plausible that Sheriff Gore delegated policy-making authority for LCDF and other County jails to Asst. Sheriff Miller or ratified his policy decisions and the bases for them.  Thus, Asst. Sheriff Miller is separately suable in his official capacity.

15-cv-199-WQH-MDD

1    Accordingly, the Court **RECOMMENDS** that Defendants' Motion

2    to Dismiss Asst. Sheriff Miller in his official capacity as a duplicative

3    party be **DENIED**.

4          3. **Captain Milloy**

5          Plaintiff alleges that Capt. Milloy is responsible for various

6    subdivisions of the Detention Services Bureau, including implementing

7    policies at LCDF.  (ECF No. 4 at 6 ¶ 7).  Defendants argue that Capt.

8    Milloy should be dismissed in her official capacity as a duplicative

9    party.  (ECF No. 20 at 10).

10         As stated previously, only a final policy maker may be held liable

11   for unconstitutional policies.  Plaintiff claims that Capt. Milloy is a

12   "[c]ommander with the Detention Services Bureau."  (ECF No. 4 at 6 ¶

13   7).  Plaintiff only alleges that Capt. Milloy implemented policies.  (*Id.*).

14   Unlike Sheriff Gore and Asst. Sheriff Miller, Plaintiff does not claim

15   Capt. Milloy is responsible for the overall management and operation of

16   County jails or that she promulgated policies for them.  The Court

17   therefore finds that Capt. Milloy should be dismissed in her official

18   capacity because she lacks final policy-making authority for the

19   purposes of municipal liability under § 1983.

20         Accordingly, the Court **RECOMMENDS** that Defendants' Motion

21   to Dismiss Capt. Milloy as a duplicative party in her official capacity be

22   **GRANTED** without leave to amend.

23         4. **County of San Diego**

24         Plaintiff alleges that the County is "responsible for the actions

25   and/or inactions and the policies, procedures, customs and practices of

12

15-cv-199-WQH-MDD

1  [SDSD] and its employees and agents."  (ECF No. 4 at 5 ¶ 4).

2  Defendants do not contest that the County is properly named.  (ECF

3  No. 20 at 10).  Accordingly, the Court finds that the County is a

4  properly named Defendant for the purposes of this Motion to Dismiss.

5      **C. Official Capacity Policy Claims**

6          Plaintiff alleges that the postcard and scanning policies violate

7  her Eighth and Fourteenth Amendment rights.[1]  (*Id.*).

8          To plead a civil rights violation under § 1983, Plaintiff must

9  sufficiently allege: (1) a violation of a right secured by the Constitution

10  and United States law; and (2) that a person acting under color of state

11  law committed the violation.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

12  Plaintiff adequately alleges the second element because all Defendants

13  acted in the course of their official duties under state law.  Plaintiff's

14

15  _____

16          [1] Although Plaintiff invokes the Eighth Amendment, she was a
   pre-trial detainee at the time of the events and when she filed the

17  Complaint and the FAC.  (ECF No. 4 at 4, 13).  Claims arising before
   conviction and sentence are not subject to the Eighth Amendment.

18  *Graham v. Conner*, 490 U.S. 386, 393 & n.6 (1989).

19          A pre-trial detainee's § 1983 claims arise under the Due Process
   clause of the Fourteenth Amendment rather than the Eighth

20  Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979);
   *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1440 & n.7 (9th Cir.

21  1991).  However, a pre-trial detainee's Due Process rights are "at least
   as great" as those Eighth Amendment protections enjoyed by convicted

22

23  prisoners.  *Maddox v. Los Angeles*, 792 F.2d 1408, 1414 (9th Cir. 1986);
   *see also Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1244 (9th

24  Cir. 2010) (stating deliberate indifference standard is applicable to pre-
   trial detainee alleging due process violations against county officials for

25  failure to address medical needs).

13

official capacity policy claims turn on whether her Due Process rights were violated by the mail policies.

A plaintiff alleging that her Fourteenth Amendment Due Process rights were violated must meet two elements: (1) there is a protected liberty interest; and (2) the plaintiff was deprived of that interest without Due Process. *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). The "range of interests protected by procedural due process is not infinite . . . . Due Process is required only when a decision of the State implicates an interest within the protection of the Fourteenth Amendment." *Ingraham v. Wright*, 430 U.S. 651, 672 (1977) (citing *Roth*, 408 U.S. at 570-571).

"[A] municipality cannot be held liable solely for the acts of others, *e.g., solely* because it employs a tortfeasor." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original). "But the municipality may be held liable when execution of a government's *policy or custom* inflicts the injury." *L.A. Cnty. v. Humphries*, 562 U.S. 29, 36 (2010) (quoting *Monell*, 436 U.S. at 694) (emphasis in *Humphries*) (internal quotations omitted).

### 1. Postcard-only Policy

Plaintiff claims that SDSD implemented a "postcard only" mail policy which restricted her mail and "neutralized" her right to education. (*Id*. at 11 ¶¶ 48-49). Plaintiff states she was attempting to participate in paralegal "correspondence classes." (*Id*. ¶¶ 48, 50). Plaintiff asserts that her information package and application were rejected by unnamed jail staff because they were not in the form of a

14

postcard.  (*Id.* ¶ 49).  Plaintiff claims she filed a tort claim in January 2015 demanding the County pay $499 and allow her to study via a correspondence course.  (*Id.* ¶ 50).  Plaintiff states the County rejected her claim despite it being timely filed.  (*Id.* ¶ 51).  Plaintiff alleges the denial of her mail concerning correspondence classes violates California Penal Code § 1063.[2]  (*Id.* ¶ 47).  Defendants argue that Plaintiff fails to state a factually plausible claim that the postcard policy violates her constitutional rights.  (ECF No. 20 at 11).

Prisoners, including pre-trial detainees, have a liberty interest in receiving mail and are entitled to some Due Process protections when deprived of it.  *Roberts v. Apker*, 570 Fed. Appx. 646, 648 (9th Cir. 2014) (citing *Krug v. Lutz*, 329 F.3d 692, 696 (9th Cir. 2003)).  If mail is rejected, inmates must be provided with: "(1) notice to the inmate of the rejection, (2) a reasonable opportunity to appeal the rejection, and (3) review by an independent official."  *Id.*

Plaintiff received notice because she states that the "information and application were rejected and logged into [the] jail computer as being rejected for not being a postcard."  (ECF No. 4 at 11 ¶ 49). Plaintiff filed a tort claim over the issue, but does not allege she was denied either an opportunity to appeal or that an independent official failed to review the rejection.  (*Id.* ¶ 50).  Plaintiff therefore fails to

---

[2] CAL. PEN. CODE § 1063 was repealed in 1988 and related to challenging the jury.  It appears that Plaintiff intended to refer to CAL. CODE REGS. § 1063 which provides parameters for local detention facilities in adopting policies and procedures regarding inmate correspondence.

15

1   allege sufficient facts to meet the second element of her Due Process
2   claim. *Roth*, 408 U.S. at 569. Dismissal of this claim without prejudice
3   and with leave to amend is appropriate, because it is not apparent that
4   it would be futile for Plaintiff to amend the complaint by adding
5   allegations to support the second element of her Due Process claim.

6       Although Plaintiff fails to sufficiently allege a violation of her Due
7   Process rights, the Court, construing Plaintiff's FAC liberally as
8   required, finds that Plaintiff has alleged sufficient facts to state a First
9   Amendment violation.

10      Because Plaintiff claims it was the *restriction* on inmate mail that
11  violated her alleged right to education under the Due Process clause,
12  the First Amendment is implicated. *Hrdlicka v. Reniff*, 631 F.3d 1044,
13  1048 (9th Cir. 2011). The First Amendment applies to the states via the
14  Fourteenth Amendment. *Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2226
15  (2015). Both prisoners and pre-trial detainees enjoy "a First
16  Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d
17  264, 265 (9th Cir. 1995) (per curiam). Pre-trial detainees and prisoners
18  do not have the same "full range of freedoms of an unincarcerated
19  individual." *Bell*, 441 U.S. at 546. "[R]estrictive prison regulations are
20  permissible if they are reasonably related to legitimate penological
21  interests." *Beard v. Banks*, 548 U.S. 521, 528 (2006) (citing *Turner v.*
22  *Safley*, 482 U.S. 78, 89-91 (1987)) (internal quotations omitted).

23      Courts addressing postcard-only policies have found such policies
24  implicate the First Amendment rights of prisoners and pre-trial
25  detainees. *See Hrdlicka*, 631 F.3d at 1049 (stating that "publishers and

15-cv-199-WQH-MDD

inmates have a First Amendment interest in communicating with each other"); *Nelson v. City of Los Angeles,* No. CV 11-5407-PSG (JPR), 2015 U.S. Dist. LEXIS 56274, at *39 (C.D. Cal. Feb. 18, 2015) (finding that postcard policy implicates inmates' First Amendment rights); *Covell v. Arpaio*, 662 F. Supp. 2d 1146, 1152-53 (D. Ariz. 2009) (finding postcard policy implicates inmates' First Amendment rights); *see also Prison Legal News v. Cnty. of Ventura*, No. 14-0773-GHK (EX), 2014 U.S. Dist. LEXIS 84574, at *14-15 (C.D. Cal. June 16, 2014*)* (finding postcard policy unconstitutional where defendants offered no evidence that it enhanced jail security).

The postcard policy at its core is a restriction on inmate mail which implicates the First Amendment.  (ECF No. 4 at 5-7 ¶¶ 5-7, at 11 ¶ 47-49).  The issue of whether Defendants can establish a legitimate penological interest in the postcard policy is a question to be resolved at another juncture in the proceedings.  The Court finds that Plaintiff adequately alleges a violation of her First Amendment right to send and receive mail.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's postcard-only policy claim be **GRANTED** with leave to amend as to her Due Process claim, but **DENIED** as to Plaintiff's First Amendment postcard policy claim.

### a. Denial of Education

Plaintiff also claims that the postcard policy violated her right to education.  (ECF No. 4 at 11 ¶¶ 48).  Plaintiff alleges that she filed a tort claim requesting the County to pay $499 for her paralegal course

15-cv-199-WQH-MDD

1   but was rejected.  (*Id*. ¶¶ 50-51).  Defendants argue that prisoners do

2   not have a constitutional right to education.  (ECF No. 20 at 16).

3         "In general, a prisoner has no constitutional right to . . . education

4   while in prison."  *McKinney v. Kuzirian*, No. 91-16462, 1992 U.S. App.

5   LEXIS 19135, at *3-4 (9th Cir. 1992) (citing *Moody v. Daggett,* 429 U.S.

6   78, 88 n.9 (1976); *Rizzo v. Dawson,* 778 F.2d 527, 531 (9th Cir. 1985)).

7   But "state statutes may create liberty interests that are entitled to

8   procedural protections of the Due Process Clause of the Fourteenth

9   Amendment."  *Vitek v. Jones*, 445 U.S. 480, 488 (1980).  "County boards

10  of education are authorized to provide general education services to

11  prisoners in county jails."  *L.A. Unified Sch. Dist. v. Garcia*, 669 F.3d

12  956, 962 (9th Cir. 2012) (citing Cal. Educ. Code § 1900).[3]

13        Although the County *has* authority to provide educational

14  programs in its jails, there is no statutory or constitutional requirement

15  that it *must* provide such programs.  *McKinney*, 1992 U.S. App. LEXIS

16  19135, at *4.  The County chose not to pay for or provide Plaintiff with

17  her desired paralegal course, which is within its discretion.  Plaintiff's

18  claim for denial of education therefore fails.

19        Accordingly, the Court **RECOMMENDS** that Defendants' Motion

20  to Dismiss Plaintiff's claim for denial of education be **GRANTED**

21  without leave to amend.  The Court recommends that this claim be

22  dismissed without leave to amend because Plaintiff has not argued that

23

24        [3] CAL. EDUC. CODE § 1900 states in relevant part that counties "shall have authority" to implement educational programs in county

25  jails.  The statute is silent on whether counties must provide educational programs to adults in county jails.

1   she can provide any additional facts to cure the defect in the claim and

2   this Court is aware of none.

3   　　　　　　　　**2. Scanning Policy**

4   　　　　Plaintiff claims unnamed LCDF staff read and censored her legal

5   mail and items she took with her to legal visits, thereby violating her

6   Fourteenth Amendment rights.  (*Id.* at 12 ¶ 54).  Plaintiff alleges she

7   filed grievances over the "frequent violation."  (*Id.* ¶ 56).  In response,

8   Sergeant Masterson told Plaintiff that jail policy allows staff to visually

9   inspect mail to verify its contents.  (*Id.* ¶ 57).  Plaintiff claims the "State

10   Board of Standards" confirmed that the scanning policy is illegal but

11   SDSD refused to change it.  (*Id.* ¶ 59).  Defendants argue that jail staff

12   are legally allowed to scan inmate mail to verify its contents and

13   therefore Plaintiff's claim fails.  (ECF No. 20 at 16).

14   　　　　The Fourteenth Amendment guarantees inmates access to the

15   courts.  *Bounds v. Smith*, 430 U.S. 817, 822 (1977).  This right of access

16   "guarantees no particular methodology but rather the capability of

17   bringing contemplated challenges to sentences or conditions of

18   confinement before the courts."  *Lewis v. Casey*, 518 U.S. 343, 356

19   (1996).  Plaintiff must establish she suffered an actual injury to her

20   ability to defend against the charges pending against her.  *Id.* at 351-

21   353.  Plaintiff fails to allege any injury to her criminal case resulting

22   from the alleged censorship of her legal mail and the Court cannot

23   supply the missing allegations.  *Ivey*, 673 F.2d at 268.  Plaintiff's Due

24   Process claim arising from the reading and censorship of her legal mail

25   therefore fails.  This claim should be dismissed with leave to amend,

because it is not apparent that Plaintiff will be unable to supply allegations to cure the defect in this claim.

Although Plaintiff fails to adequately allege a Due Process violation arising from the reading and censoring of her legal mail, the Court, construing Plaintiff's FAC liberally as required, finds that Plaintiff sufficiently alleges a violation of her Sixth Amendment rights.

A prisoner's right to send and receive mail is attenuated by the prison's competing right to adopt regulations and policies "reasonably related to legitimate penological interests," including "security, order, and rehabilitation." *Whitherow*, 52 F.3d at 265 (citing *Turner*, 482 U.S. at 89 and *Procunier v. Martinez*, 416 U.S. 396, 413 (1974)). However, "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner*, 482 U.S. at 84.

It is permissible for jail staff to open and inspect legal mail, but not *read* it, in the inmate's presence. *Wolff v. McDonnell*, 418 U.S. 539, 575-77 (1974) (emphasis added). "The practice of requiring an inmate to be present when [her] legal mail is opened is a measure designed to *prevent* officials from reading the mail in the first place." *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014) (citing *Wolff*, 418 U.S. at 577) (emphasis in original). "Courts have analyzed claims regarding the confidentiality of attorney-client communications under various constitutional principles, including . . . the [Due Process clause and] Sixth Amendment." *Id*. at 909 (internal citations and quotations omitted). "In American criminal law, the right to privately confer with counsel is nearly sacrosanct." *Id*. at 910.

15-cv-199-WQH-MDD

The Sixth Amendment is applicable to the states via the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 342-43 (1963). "A criminal defendant's ability to communicate candidly and confidentially with [her] lawyer is essential to [her] defense." *Nordstrom*, 762 F.3d at 910. "One threat to the effective assistance of counsel posed by government interception of attorney-client communications lies in the inhibition of free exchanges between defendant and counsel." *Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977). "[T]he Constitution does *not* permit . . . [the] *reading* [of] outgoing attorney-client correspondence." *Nordstrom,* 762 F.3d at 910-11 (emphasis in original). "Pretrial detainees have a significantly greater interest in the right to counsel than convicted prisoners." *U.S. v. Loughner*, 672 F.3d 731, 797 (9th Cir. 2012).

The Ninth Circuit in *Nordstrom* addressed a plaintiff's § 1983 claim against prison staff reading his legal mail. *Id*. The court held that the plaintiff adequately stated a Sixth Amendment claim where he alleged that: (1) prison officials had a policy and practice of reading his legal mail; (2) prison officials claimed the right to do so; and (3) the policy violated his ability to confidentially communicate with his attorney. *Id*. at 911. The Ninth Circuit dispensed with the substantial prejudice requirement for Sixth Amendment claims. *Id*. at 912 (Bybee, J. dissenting).

Plaintiff is a pre-trial detainee who is "represented by legal counsel for her criminal case." (ECF No. 4 at 12 ¶ 60). Plaintiff asserts similar claims as the plaintiff in *Nordstrom*: (1) there is a policy by

15-cv-199-WQH-MDD

which jail staff read and censor her legal communications between her and her attorney; (2) Sgt. Masterson stated that jail staff are entitled to inspect inmate legal mail; and (3) the scanning policy violates her attorney-client privilege.  (ECF No. 4 at 12 ¶¶ 53-58).  "It is obvious . . . that a policy or practice permitting prison officials to not just inspect or scan, but to *read* an inmate's letters to [her] counsel is highly likely to inhibit the sort of candid communications that the right to counsel and the attorney-client privilege are meant to protect."  *Nordstrom*, 762 F.3d at 910 (emphasis in original).  Following *Nordstrom*, the Court finds that Plaintiff adequately states a Sixth Amendment claim.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's scanning policy claim be **GRANTED** with leave to amend as to Plaintiff's Due Process claim, but **DENIED** as to Plaintiff's Sixth Amendment claim.

### D. Generalized Policy Claim

Plaintiff asserts that SDSD "repeatedly" implements policies that violate her Due Process and Eighth Amendment rights and that Defendants' actions are "motivated by ill motive and intent."  (ECF No. 4 at 13 ¶¶ 65-29).  Defendants argue that Plaintiff's allegations are legal conclusions without factual basis.  (ECF No. 20 at 11).

"[A] court considering a motion to dismiss can . . . identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 566 U.S. at 679.  Plaintiff must provide the court

1  with "more than an un-adorned, the-defendant-unlawfully-harmed-me

2  accusation." *Id*. at 678.

3      Plaintiff's generalized policy claim sets forth no factual

4  allegations.  Plaintiff makes general assertions that SDSD implements

5  policies that frequently violate her constitutional rights.  Plaintiff does

6  not name or describe these policies.  Legal conclusions couched as

7  factual allegations are insufficient to state a claim.  *Id*.

8      Accordingly, the Court **RECOMMENDS** that Defendants' Motion

9  to Dismiss Plaintiff's generalized policy claim be **GRANTED** with leave

10  to amend.

11  **E. Individual Capacity Policy Claims**

12      Plaintiff names Sheriff Gore, Asst. Sheriff Miller and Capt. Milloy

13  in their individual capacities.  (ECF No.4 at 5-6).  Plaintiff makes no

14  allegation that Sheriff Gore, Asst. Sheriff Miller or Capt. Milloy were

15  personally involved in, present during or knew of the alleged violations

16  at LCDF.  (ECF No. 5-7 ¶¶ 5-7).

17      Individual liability in a § 1983 action attaches only if the plaintiff

18  can show the defendant personally participated in the constitutional

19  violations.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

20  Supervisory officials cannot be held liable for the actions of their

21  subordinates under § 1983.  *Pembaur v. City of Cincinnati*, 475 U.S.

22  469, 479 (1986).  Vague or conclusory allegations of supervisory

23  misconduct are insufficient.  *Ivey*, 376 F.2d at 268.  It is not enough for

24  a plaintiff to allege that a supervisory official is liable as an individual

25  because he knew about the constitutional violation or created policies

and procedures that resulted in the violation.  *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

Plaintiff fails to allege that Sheriff Gore, Asst. Sheriff Miller or Capt. Milloy were present during, personally involved in or otherwise had knowledge of the alleged constitutional violations.  The Court cannot provide the missing allegations.  *Ivey*, 673 F.2d at 268. "Plaintiff's bald and conclusory allegations are insufficient to establish individual liability under [] § 1983." *Hydrick*, 669 F.3d at 942 (internal quotations and citations omitted).

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Sheriff Gore, Asst. Sheriff Miller and Capt. Milloy in their individual capacities be **GRANTED** with leave to amend.

Earlier in this Report and Recommendation, this Court recommended that Capt. Milloy, in her official capacity, be dismissed without leave to amend.  Because the Court now also recommends that Capt. Milloy, in her individual capacity, be dismissed with leave to amend, the Court **RECOMMENDS** that Capt. Milloy be **DISMISSED** from the action without prejudice.

### F. Claims against Detectives Fiske and Patterson

#### 1. Detective Fiske

Plaintiff alleges that Fiske was present when Plaintiff was arrested, questioned and processed.  (ECF No. 4 at 7 ¶ 8).  Plaintiff claims that Fiske sexually harassed her by making "repeated lewd, condescending, humiliating and highly embarrassing comments of a sexual nature" during Plaintiff's booking procedures.  (*Id*. at 8 ¶ 19).

15-cv-199-WQH-MDD

Defendants argue that embarrassing or inappropriate comments do not violate a constitutional right.  (ECF No. 20 at 12).

Mere allegations of verbal harassment or abuse are not sufficient to state a claim under § 1983.  *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)).  Plaintiff does not state what Fiske said and makes no more than a general claim that Fiske sexually harassed her.  (ECF No. 4 at 8 ¶¶ 17-19).  Plaintiff must provide the Court with "more than an un-adorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  Plaintiff's sexual harassment claim against Fiske fails.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's claim for sexual harassment against Detective Fiske in her official and individual capacities be **GRANTED** with leave to amend.

As this is the only claim alleged against Defendant Fiske, the Court **RECOMMENDS** that Defendant Fiske be **DISMISSED** from the action without prejudice.

### 2. Detective Patterson

Plaintiff makes three separate allegations against Defendant Patterson: (a) soliciting an illegal act; (b) soliciting perjury; and (c) inappropriate behavior.  (ECF No. 4 at 7-9 ¶¶ 9, 20-28).

### a. Soliciting an Illegal Act

Plaintiff alleges that Patterson executed a search warrant at her home and that during the search Patterson "solicited" her to question

15-cv-199-WQH-MDD

1  another suspect, who was represented by counsel.  (*Id.* ¶¶ 20-21).

2  Plaintiff contends Patterson's solicitation violates "civil law."  (*Id.*).

3        Defendants argue that Plaintiff does not allege she was coerced

4  into making self-incriminating statements and that Patterson's conduct

5  did not so shock the conscience as to be actionable under § 1983.  (ECF

6  No. 20 at 12).

7        "[U]nlawful police interrogation techniques might give rise to a

8  substantive due process claim under the Fourteenth Amendment."

9  *Stoot v. City of Everett*, 582 F.3d 910, 923 (9th Cir. 2009).  However, the

10  standard for demonstrating a substantive Due Process violation under

11  the Fourteenth Amendment is high.  *Id.*  Only the most egregious

12  official misconduct will be found to violate Due Process.  *Cnty. of*

13  *Sacramento v. Lewis*, 520 U.S. 833, 846 (1998).  "[P]olice torture or

14  other abuse" exemplifies the level of misconduct necessary to trigger the

15  Fourteenth Amendment.  *Chavez v. Martinez*, 538 U.S. 760, 773 (2003).

16  A Due Process claim involving police misconduct during questioning is

17  only cognizable if the official misconduct "shocks the conscience" or

18  otherwise "violates the decencies of civilized conduct."  *Lewis*, 520 U.S.

19  at 846.

20        Plaintiff makes no showing that Patterson's behavior, apart from

21  asking an allegedly improper question, "violate[d] the decencies of

22  civilized conduct."  Plaintiff does not allege that she was tortured or

23  abused into giving a response.  The Court cannot provide the missing

24  allegations.  *Ivey,* 673 F.2d at 268.  Plaintiff's claim against Patterson

25

15-cv-199-WQH-MDD

for soliciting an illegal act falls short of official misconduct that "shocks the conscience." *Lewis*, 520 U.S. at 846.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's claim for soliciting an illegal act against Detective Patterson in his official and individual capacities be **GRANTED** with leave to amend.

### b. Soliciting Perjury

Plaintiff alleges that on April 17, 2012, Patterson "made a pretext call" to her and requested that she "say that the suspect in custody had been seen by [Plaintiff] at a specified time and place." (ECF No. 4 at 9 ¶¶ 22-24). Plaintiff refused. (*Id.* ¶ 24). Plaintiff claims that Patterson then threatened to make her a suspect if she did not comply. (*Id.* ¶ 25). Plaintiff refused and was subsequently arrested as a conspirator. (*Id.* ¶ 26).

Defendants argue that Plaintiff does not allege that she was coerced into making self-incriminating statements or that Patterson's conduct rose to the level of actionable misconduct under § 1983. (ECF No. 20 at 12).

If Plaintiff was compelled to comply with Patterson's request "by methods so brutal and so offensive to human dignity that they shock the conscience," then the Fourteenth Amendment was violated. *Chavez*, 538 U.S. at 774 (internal quotations and citations omitted). By her own admission, Plaintiff states she twice refused to make a statement. (ECF No. 4 at 9 ¶¶ 24, 26). Plaintiff does not allege that Patterson did anything after her second refusal that could be considered so brutal or

27

offensive to human dignity as to shock the conscience and the Court cannot supply the missing allegations. *Ivey,* 673 F.2d at 268.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's claim of soliciting perjury against Detective Patterson in his official and individual capacities be **GRANTED** with leave to amend.

### c. Inappropriate Behavior

Plaintiff alleges that Patterson made "highly inappropriate comments" and gave Plaintiff a pair of handcuffs "to secure herself." (ECF No. 4 at 9 ¶ 28). Defendants argue that Plaintiff fails to state a claim because inappropriate comments and behavior do not violate a constitutional right. (ECF No. 20 at 12).

Mere allegations of verbal harassment or abuse are not sufficient to state a claim under § 1983. *Freeman*, 125 F.3d at 738 (citing *Oltarzewski*, 830 F.2d at 139). Plaintiff does not state what Patterson actually said or how giving her handcuffs to secure herself was inappropriate. (ECF No. 4 at 9 ¶ 28). Plaintiff's allegations are threadbare and she fails to state a claim against Patterson for inappropriate behavior. *Iqbal*, 556 U.S. at 678.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's claim of inappropriate behavior against Detective Patterson in his official and individual capacities be **GRANTED** with leave to amend.

Because this Court has recommended finding that each of the three claims against Detective Patterson be dismissed with leave to

15-cv-199-WQH-MDD

amend, the Court **RECOMMENDS** that Detective Patterson be **DISMISSED** from the action without prejudice.

### G. Miscellaneous Claims

Plaintiff makes various claims of violations and misconduct against SDSD personnel.  (ECF No. 4 at 9-13).  Plaintiff does not name any of the individuals involved as Defendants.  (*Id.*).

#### 1. Medical Claims

Plaintiff argues that SDSD personnel interfered with her medical and dental care and injured her while she was shackled.  (ECF No. 4 at 9-10 ¶¶ 29-38, at 11 ¶¶ 42-46).  Defendants argue that Plaintiff fails to state a claim for deliberate indifference to her medical needs because none of her claims involve a serious medical condition and she received treatment for her shackle injuries.  (ECF No. 20 at 14-16).

"Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment.  Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, [the Court] appl[ies] the same standards." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing *Bell*, 441 U.S. at 535 n.16 and *Redman*, 942 F.2d at 1441).

Prison authorities have a responsibility to provide for an inmate's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  In the worst instance, a failure to do so may cause an inmate to suffer serious physical injury or death, or in a less serious scenario, pain serving no "penological purpose," thereby violating the Eighth Amendment.  *Id.* at

29

15-cv-199-WQH-MDD

103.  However, medical malpractice, negligence or a prison accident does not rise to the level of a constitutional violation.  *Id.* at 105; *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991) (overruled on other grounds).  The test is "whether the officials exhibited deliberate indifference."  *McGuckin*, 974 F.2d at 1059 (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)) (internal quotations omitted).

Deliberate indifference is a high standard.  *Hamby v. Hammond*, No. 3:14-cv-05065-RBL-KLS, 2015 U.S. Dist. LEXIS 34678, at *52 (W.D. Wash. Feb. 11, 2015).  To meet the deliberate indifference standard on an Eighth Amendment claim, a plaintiff must satisfy two prongs: one objective and one subjective.  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

To satisfy the objective prong, a plaintiff must show that she has a serious medical need.  *Id.* (citing *Estelle*, 429 U.S. at 104).  A serious medical need is shown if a failure to provide adequate treatment results in wanton or unnecessary infliction of pain.  *McGuckin*, 974 F.2d at 1059.

To satisfy the subjective prong, a plaintiff must show the prison official was deliberately indifferent to her needs.  *Colwell*, 763 F.3d at 1066.  This means the official knew of an excessive risk to the inmate's health and safety and then consciously disregarded it to the inmate's harm.  *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).  The official must have been aware of facts or factual circumstances that would allow him to draw the inference that a substantial risk of serious harm to the inmate's health and safety exists, and he must *also* draw

that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added).

### a. Cleaning Solution

Plaintiff claims that during the week of October 27, 2012, she drank "caustic cleaning solution." (*Id.* at 9 ¶ 29). Plaintiff alleges that unnamed jail staff "elected to neglect" to call paramedics for three hours, causing "gastric damage." (*Id.* ¶¶ 30-31). Plaintiff claims that a "USMC" doctor admitted her but SDSD Deputies Casey and Storrs convinced the doctor to release her into "SDSD care." (*Id.* at 10 ¶¶ 32-34).

Because Plaintiff does not name the individuals who were involved as Defendants, her claim must be dismissed. The Court finds that Plaintiff may be able to cure her pleading deficiencies through proper amendment. *See Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (instructing that a prisoner "be given an opportunity to amend [her] complaint" because the prisoner "could cure the deficiencies in [her] complaint by naming the correct defendants").

Although Plaintiff does not name a proper defendant for this claim, an inmate poisoning herself objectively constitutes a serious medical need. Plaintiff claims that staff "elected to neglect" to immediately alert paramedics causing a three hour denial of treatment. (ECF No. 4 at 9 ¶¶ 30-31). The use of the word "elected" connotes that the delay in calling paramedics was the result of a conscious decision on the part of LCDF personnel rather than mere negligence. Plaintiff's use of the word "elected" also plausibly suggests that jail officials knew that

31

she drank cleaning fluid, knew that it posed an excessive risk to Plaintiff's health and safety and then consciously chose to not call paramedics for three hours resulting in gastric damage.  Plaintiff has stated a claim for deliberate indifference.  *Toguchi,* 391 F.3d at 1057; *Farmer*, 511 U.S. at 837.

Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's claim for medical interference arising from drinking the cleaning solution be **GRANTED**, and that this claim be **DISMISSED** with leave to amend.

### b. Dental Procedure and Medical Referrals

In June 2012, Plaintiff alleges that she requested dental procedures which were denied because she was not yet sentenced.  (*Id.* ¶¶ 35-36).  Plaintiff alleges the denial violates California law. [4]  (*Id.* ¶ 35).  In 2013, Plaintiff asserts that a staff doctor wrote her two referrals for an orthopedist and neurologist but she was not taken to either.  (*Id.* ¶¶ 37-38).

Plaintiff does not claim she has a serious medical condition of which staff should have been aware of in June 2013 and therefore fails to meet the deliberate indifference objective prong.  *Estelle*, 429 U.S. at 104.  Plaintiff does not allege any injury resulted from the denial of her

---

[4] CAL. PEN. CODE § 6030(e)(4) requires that pregnant inmates be provided with a "[a] dental cleaning while in a *state* facility." (emphasis added).  Because Plaintiff is incarcerated in a *county* facility, § 6030(e)(4) is inapplicable to her dental claims as a matter of statutory construction.

dental procedures or medical referrals.  The Court cannot provide the missing allegations.  *Ivey*, 673 F.2d at 268.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's claims for denial of medical and dental care be **GRANTED** with leave to amend.

### c. Injuries from Shackles

Plaintiff alleges she suffered "numerous scratches on [her] wrist, discolored and swollen ankles" as a result of being shackled on December 11, 2014.  (ECF No. 4 at 11 ¶¶ 42-45).  Plaintiff states her injuries were treated by jail medical staff.  (*Id*. ¶ 46).

Plaintiff's claim fails because she does not allege that she was not provided with adequate treatment.  *See Colwell*, 763 F.3d at 1066 (stating that the plaintiff must allege denial of treatment).  Plaintiff admits she received treatment for her minor injuries.  (ECF No. 4 at 11 ¶ 46).  Plaintiff's claim fails the objective prong of the deliberate indifference standard because she did not have a serious medical condition that was denied treatment.  *Colwell*, 763 F.3d at 1066; *McGuckin*, 974 F.2d at 1059.  Plaintiff's injuries were minor, she received treatment and, therefore, her claim fails.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's claim for injuries arising from being shackled on December 11, 2014, be **GRANTED** without leave to amend.

### 2. Improper Use of Shackles

Plaintiff argues that she was improperly shackled while pregnant in violation of California law.  (ECF No. 4 at 10 ¶¶ 39-40).  Defendants

33

15-cv-199-WQH-MDD

1   argue that Plaintiff does not allege a violation amounting to cruel and

2   unusual punishment arising from being shackled.  (ECF No. 20 at 13).

3   Defendants contend that at most Plaintiff states a claim for negligence

4   which is not actionable under § 1983.  (*Id*. at 14).

5        As stated herein, a pre-trial detainee's claims are analyzed under

6   the Fourteenth Amendment, which is the same as Eighth Amendment

7   standards.  "The Eighth Amendment's prohibition against cruel and

8   unusual punishment protects prisoners not only from inhumane

9   methods of punishment but also from inhumane conditions of

10  confinement."  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir.

11  2006).  Because jail is a harsh and restrictive institution, an injury does

12  not automatically violate the Constitution.  *Id*.  A prisoner alleging

13  cruel and unusual punishment must allege two elements: (1) a

14  "sufficiently serious" deprivation which posed a "substantial risk of

15  harm;" and (2) the defendant acted with intent to cause the plaintiff

16  wanton and unnecessary suffering.  *Farmer*, 511 U.S. at 834; *Wilson v.*

17  *Seiter*, 501 U.S. 294, 297 (1991).  The inquiry into the second element

18  asks whether the defendant acted with deliberate indifference to the

19  plaintiff's health or safety.  *Foster v. Runnels*, 554 F.3d 807, 812 (9th

20  Cir. 2009).

21                          **a. Shackled While Pregnant**

22       Between May 15 and July 31, 2012, Plaintiff alleges that she was

23  improperly shackled "numerous times" while she was pregnant during

24  transport to court appearances.  (ECF No. 4 at 10 ¶¶ 39-41).  During the

25  week of May 15, 2012, Plaintiff claims she fell while shackled but a

34

courtroom deputy and her attorney prevented her from hitting the ground. (*Id.* ¶ 41).

Plaintiff does not allege that the deputies who shackled her intended to cause her harm, rather she alleges violations of California Penal Code § 3407(a). (ECF No. 4 at 10 ¶ 40). California Penal Code § 3407(a) provides that "[a]n inmate known to be pregnant or in recovery after delivery shall not be restrained by the use of leg irons, waist chains, or handcuffs behind the body." *Id.* Because § 3407(a) prescribes a duty to protect Plaintiff against the use of restraints while she is pregnant, a "violation of the duties [] imposed by statute . . . may subject [a defendant] to liability under section 1983." *Johnson v. Duffy*, 588 F.2d 740, 744 (9th Cir. 1978). Although Plaintiff fails to adequately allege that those deputies who shackled her acted with intent to harm her, she does allege a repetitive violation of § 3407(a) because she claims she was shackled while pregnant in multiple instances. (ECF No. 4 at 10 ¶¶ 39-40). Plaintiff states that when she fell she had "no access to hands to brace for the fall on the stomach." (ECF No. 4 at 10 ¶ 11). It is plausible that Plaintiff's fall and inability to use her hands stemmed from the use of leg irons, waist chains or having her hands restrained behind her back, all of which California Penal Code § 3407(a) forbids. Because Plaintiff fails to name those individuals involved as Defendants, however, her claim must be dismissed. Plaintiff may cure her pleading deficiencies through proper amendment. *See Lopez*, 203 F.3d at 1130-31 (instructing that a prisoner "be given an opportunity to

15-cv-199-WQH-MDD

1 amend [her] complaint" because the prisoner "could cure the
2 deficiencies in [her] complaint by naming the correct defendants").

3 Accordingly, the Court **RECOMMENDS** that Defendants' Motion
4 to Dismiss Plaintiff's claims of improper shackling while pregnant be
5 **GRANTED** and be **DISMISSED** with leave to amend.

6 ### b. Improper Shackling on December 11, 2014

7 On December 11, 2014, Plaintiff alleges her shackles were secured
8 too tightly causing bruising, discoloration and swelling on her ankles
9 and numerous scratches on her wrists. (*Id.* at 11 ¶ 45).

10 Plaintiff does not allege that she was pregnant when she was
11 shackled on December 11, 2014. Nor does she allege that the person
12 who secured her shackles during transport did so with the intent to
13 cause her harm. (ECF No. 4 at 11 ¶¶ 42-43). Plaintiff also fails to
14 name as a Defendant the individual who shackled her. The Court
15 cannot provide the missing allegations. *Ivey,* 673 F.2d at 268.

16 Jail officials can shackle inmates for security reasons during
17 transport and when the inmate is otherwise out of her cell. *LeMaire v.*
18 *Maas*, 12 F.3d 1444, 1457 (9th Cir. 1993). Plaintiff cannot state a
19 constitutional violation arising from her injuries because she alleges
20 medical staff treated her injuries. (ECF No. 4 at 11 ¶ 46); s*ee Estelle*,
21 429 U.S. at 107 (finding that treatment of injuries negated claim under
22 § 1983); *see also Colwell*, 763 F.3d at 1066 (stating that plaintiff must
23 allege denial of treatment). Plaintiff's claim for improper shackling on
24 December 11, 2014, therefore fails.

25

15-cv-199-WQH-MDD

1    Accordingly, the Court **RECOMMENDS** that Defendants' Motion

2    to Dismiss Plaintiff's claim of improper shackling on December 11,

3    2014, be **GRANTED** without leave to amend.

4    ### 3. Denial of Legal Resources

5    Plaintiff alleges that she was denied access to *pro per* resources,

6    law library access and use of a computer for "active" civil cases she filed.

7    (ECF No. 4 at 8 ¶ 16, at 12 ¶¶ 60-61).  Defendants argue that Plaintiff

8    has no constitutional right of access to the courts to litigate civil claims.

9    (ECF No. 20 at 17).

10    An inmate's right of access to the courts is grounded in the

11    Fourteenth Amendment.  *Sands v. Lewis*, 886 F.2d 1166, 1168 (9th Cir.

12    1989).  In *Lewis*, the Supreme Court instituted an actual injury

13    requirement on prisoners alleging interference with their access to the

14    courts.  *Lewis*, 518 U.S. at 354.  Actual injury must be alleged for any

15    access to the courts claim because it is a jurisdictional requirement

16    giving the plaintiff standing to bring suit.  *Nevada Dep't. of Corr. v.*

17    *Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011).  A prisoner cannot satisfy

18    the injury requirement with "any type" of injury.  *Id.*  A plaintiff

19    pleading denial of access to the courts must allege interference with a

20    direct criminal appeal, habeas corpus petition or civil rights action.

21    *Lewis*, 518 U.S. at 354-56.

22    Plaintiff alleges interference with "active" civil cases, but fails to

23    specify the causes of action.  Absent additional information, the Court

24    cannot determine whether this claim refers to a habeas corpus petition

25    or civil rights action that would fall within *Lewis*'s actual injury

37

requirement.  The Court cannot provide the missing allegations.  *Ivey,* 673 F.2d at 268.  Plaintiff fails to meet the actual injury requirement under *Lewis* and her claim therefore fails.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's claims of denial of access to *pro per* resources, law library and computer be **GRANTED** with leave to amend.

### 4. Denial of Court Approved Contact Visits

Plaintiff alleges that she is permitted contact visits with her minor child.  (ECF No. 4 at 13 ¶ 62).  Plaintiff claims that her December 2014 contact visit was cancelled due to a new policy denying ADSEG inmates contact visits violating California Penal Code § 6030[5] and Title 15 § 1053.[6]  (*Id.* ¶ 63).  Plaintiff asserts that repeated grievances have not restored her contact visits.  (*Id.* ¶ 64).  Defendants argue that Plaintiff does not have an absolute right to contact visits as a pre-trial detainee.  (ECF No. 20 at 18).

Pre-trial detainees and other prisoners do not have an absolute constitutional right to contact visits.  *Block v. Rutherford*, 468 U.S. 576, 588 (1984).  "The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due

---

[5] CAL. PEN. CODE § 6030 establishes minimum standards for state and local correctional facilities.

[6] The Court believes Plaintiff intended to cite CAL. CODE REGS. tit. 15, § 1053, which concerns ADSEG inmates.  § 1053 provides in pertinent part: "[ADSEG] shall consist of separate and secure housing but shall not involve any other deprivation of privileges than is necessary to obtain the objective or protecting inmates and staff."

1   Process Clause." *Ky. Dep't. of Corr. v. Thompson*, 490 U.S. 454, 461
2   (1989) (internal citation and quotations omitted).  Plaintiff's claim fails
3   as a matter of law because she has no constitutional right to contact
4   visits while incarcerated.  *Block*, 468 U.S. at 588.

5       Accordingly, the Court **RECOMMENDS** that Defendants' Motion
6   to Dismiss Plaintiff's claim for denial of contact visits be **GRANTED**
7   without leave to amend.

8   ## H. Injunctive and Declaratory Relief

9       Plaintiff requests injunctive and declaratory relief.  (ECF No. 4 at
10  14 ¶ 72).  Defendants argue that none of Plaintiff's claims support a
11  request for injunctive relief because Plaintiff fails to state a
12  constitutional violation and because each alleged deprivation was an
13  isolated event.  (ECF No. 20 at 13).

14      On February 26, 2016, Plaintiff filed a Motion for Extension of
15  Time to file an opposition.  (ECF No. 30).  Plaintiff states she is now
16  incarcerated at a "CDCR [California Department of Corrections and
17  Rehabilitation] receiving center."  (*Id*.).  Plaintiff does not bring her
18  claims for injunctive or declaratory relief on behalf of anyone other than
19  herself.  Because Plaintiff is now in CDCR custody rather than SDSD
20  custody, her request for injunctive relief from the allegedly
21  unconstitutional SDSD policies and practices is now moot.  *See*
22  *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1094 (9th Cir. 2004)
23  (holding a prisoner's release from custody generally terminates her
24  legal interest in injunctive relief as a matter of law).

25

15-cv-199-WQH-MDD

1  Because Plaintiff also requests declaratory relief from SDSD's

2  allegedly unconstitutional policies, she must demonstrate that there is

3  a "present, live controversy." *Am. Tunaboat Ass'n. v. Brown*, 67 F.3d

4  1404, 1407 (9th Cir. 1995). "A federal court does not have jurisdiction

5  to give opinions upon moot questions or abstract propositions, or to

6  declare principles or rules of law which cannot affect the matter in issue

7  in the case before it." *Id.* (quoting *Church of Scientology v. U.S.,* 506

8  U.S. 9, 12 (1992)) (internal quotations omitted). The claim is moot and

9  must be dismissed if an event transpires which precludes the court from

10  granting effective relief. *GTE California, Inc. v. FCC*, 39 F.3d 940, 945

11  (9th Cir. 1994). An exception exists if the plaintiff can demonstrate

12  that "there is a reasonable expectation that [] [she] will be subjected to

13  the same action again." *Alaska Fish & Wildlife Fed'n. & Outdoor*

14  *Council, Inc. v. Dunkle*, 829 F.2d 933, 939 (9th Cir. 1987).

15  Because Plaintiff brings her claims on behalf of only herself and

16  because she is no longer in SDSD custody, there is no longer a present

17  and live controversy about whether the allegedly unconstitutional

18  SDSD policies violate her personal constitutional rights for the

19  purposes of granting declaratory relief. Furthermore, Plaintiff is

20  unable to demonstrate that she reasonably expects to be subjected to

21  the same alleged violations by SDSD again because there is no

22  reasonable expectation that she will be transferred from CDCR custody

23  back to SDSD custody.

24  Accordingly, the Court **RECOMMENDS** that Defendants' Motion

25  to Dismiss Plaintiff's claims for injunctive relief be **GRANTED** and

15-cv-199-WQH-MDD

that Plaintiff's claims for injunctive and declaratory relief be **DISMISSED** with prejudice and without leave to amend.

Although Plaintiff's requests for injunctive and declaratory relief are dismissed, she may still pursue her claims for money damages arising from the claims that remain pending. *See Ceniceros v. Bd. of Tr. of the San Diego Unified Sch. Dist.,* 106 F.3d 878, 879 n.1 (9th Cir. 1997) (finding that although plaintiff's claims for injunctive and declaratory relief were mooted, plaintiff's claim for monetary damages survived); *see also Wilson v. Nevada*, 666 F.2d 378 (9th Cir. 1982) (stating that although claims for injunctive and declaratory relief may be moot, the plaintiff could still seek monetary damages on his claim); *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 871 (stating "[a] live claim for nominal damages will prevent dismissal for mootness").

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) Approving and Adopting this Report and Recommendation; (2) **GRANTING** Defendants' Motion to Dismiss in Part; and (3) **DISMISSING**:

- Sheriff Gore in his individual capacity, without prejudice;
- Asst. Sheriff Miller in his individual capacity, without prejudice;
- Capt. Milloy in her official, with prejudice;
- Capt. Milloy in her individual capacity, without prejudice;
- Detective Fiske in her official and individual capacities, without prejudice;

41

- Detective Patterson in his official and individual capacities, without prejudice;
- Plaintiff's first claim of sexual harassment against Detective Fiske, with leave to amend;
- Plaintiff's second claim of soliciting an illegal act against Detective Patterson, with leave to amend;
- Plaintiff's third claim of soliciting perjury against Detective Patterson, with leave to amend;
- Plaintiff's fourth claim of inappropriate behavior against Detective Patterson, with leave to amend;
- Plaintiff's fifth claim of medical interference arising out of her drinking the cleaning fluid, with leave to amend;
- Plaintiff's sixth claim of denial of medical and dental care, with leave to amend;
- Plaintiff's seventh claim of improper shackling while pregnant, with leave to amend;
- Plaintiff's eighth claim of improper shackling on December 11, 2014, without leave to amend;
- Plaintiff's ninth claim of denial of education, without leave to amend;
- Plaintiff's Due Process claim arising from the postcard-only mail policy, with leave to amend;
- Plaintiff's tenth claim of denial of Due Process arising from the scanning policy, with leave to amend;

15-cv-199-WQH-MDD

- Plaintiff's eleventh claim of denial of access to *pro per* resources, law library and computer, with leave to amend;

- Plaintiff's twelfth claim of denial of court approved contact visits, without leave to amend;

- Plaintiff's thirteenth claim of generally unconstitutional policies and practices implemented by SDSD, with leave to amend; and

- Plaintiff's claims for injunctive and declaratory relief, with prejudice and without leave to amend.

If the Court's recommendations are adopted, the following claims remain **PENDING**:

- Plaintiff's ninth claim against the County of San Diego, Sheriff Gore and Asst. Sheriff Miller in their official capacities for violation of her First Amendment rights arising from the postcard-only policy;

- Plaintiff's tenth claim against the County of San Diego, Sheriff Gore and Asst. Sheriff Miller in their official capacities for violation of her Sixth Amendment rights arising from the scanning policy; and

- Plaintiff's claim for monetary damages arising out of the pending claims.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **May 27, 2016**. The document should be captioned "Objections to Report and Recommendation."

15-cv-199-WQH-MDD

1 **IT IS FURTHER ORDERED** that any reply to the objection

2 shall be filed with the Court and served on all parties no later than

3 **June 3, 2016**.  The parties are advised that the failure to file objections

4 within the specified time may waive the right to raise those objections

5 on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455

6 (9th Cir. 1998).

7

8 **IT IS SO ORDERED.**

9

10

11 Dated:   May 5, 2016

12 Hon. Mitchell D. Dembin

   United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

15-cv-199-WQH-MDD